## FINDLEY *vs.* DEAL.

A litigant desiring the services of an attorney, gave him the following instrument, in consideration of services to be rendered in a pending case: "Received of J. J. Findley and W. F. Findley twenty-five dollars in full payment for one black cow, about six years old, and one calf now belonging to said cow, about two months old, said cow being the cow I bought of Bob Reed. It is agreed by the purchasers of the above property and Austin Hughes the signer of this receipt, that said Hughes shall retain the property and use the same from this date to the first day of October next, at which time, should the said Hughes pay to said Findleys twenty-five dollars, then the property to remain said Hughes', but if the money be not paid that day the property to be delivered up to the said Findleys:"

*Held*, that this paper was a mortgage, and did not pass title to the property described therein.

September 19, 1882.

Mortgage. Title. Before Judge WELLBORN. Hall Superior Court. February Term, 1882.

Findley brought *trover* in a justice's court against Deal for a cow and calf. The case was tried before a jury, who found for the defendant. The plaintiff carried the case to the superior court by *certiorari*. On the hearing, the court sustained the finding below, and plaintiff excepted. The case was based on the contract set out in the decision.

J. M. TOWERY; W. F. FINDLEY, for plaintiff in error.

H. H. PERRY, for defendant.

CRAWFORD, Justice.

The litigation in this case arises upon the following contract, and the question is whether it passed the title to the property in dispute:

"GAINESVILLE, GA., September 10, 1880.

Received of J. J. Findley and W. F. Findley twenty-five dollars in full payment for one black cow, about six years old, and one calf now belonging to said cow, about two months old, said cow being the same I bought of Bob Reed. It is agreed by the purchasers of the above property and Austin Hughes, the signer of this receipt, that said Hughes shall retain the property and use the same from this date to the first day of October next, at which time should the said Hughes pay to said Findleys twenty-five dollars, then the property is to remain the said Hughes', but if the money be not paid that day, the property to be delivered up to the said Findleys. Witness my hand and seal.

|  |  |
|---|---|
| | His |
| (SEAL.) | AUSTIN (X) HUGHES." |
| | mark. |
| A. S. CARTER. | |

Taking this instrument by itself alone, it is extremely doubtful whether it is a bill of sale or a mortgage. The first part indicates a bill of sale, and the last a mortgage. Received $25.00 in full payment for a cow and calf, describing and identifying them, indicates a sale; that the maker is to retain the property until the first of October following, at which time should he pay $25.00, then the property to remain his, indicates a mortgage.

Findley *vs.* Deal.

Reading it in the light shown on the trial, inclines our mind to construe it a mortgage.

J. J. Findley testified that the contract was made with him; that Hughes desired the services of an attorney to represent a case pending in court, and that the services so to be rendered was the consideration for the contract; he had it executed and turned it over to his son, W. F. Findley, who was an attorney.

Remembering that the contract was, that Hughes should keep the property and use it until the first of October, and if at that time he should pay twenty-five dollars, then the property was to remain his, it looks to us as though the $25.00 for the services was but a debt, and the paper but a mortgage to secure its payment.

When, however, we compare this instrument with that construed by this court in the case of *Frost vs. Allen*, 57th *Ga.*, 327, we are constrained to hold that it is but a mortgage.

In that case, the defendants being indebted to the plaintiff, executed a paper by which they declared that in consideration of the sum owed, "we hereby sell, transfer, and assign to said Frost the following property to-wit : * * *. And it is our intention by this contract, to vest the title to said property in said Frost, in consideration of our indebtedness to said Frost, and we hereby waive all right to a homestead and exemption in and to said property." It was further agreed between the parties that if the makers of the instrument should well and truly pay off the debt by the first day of November, 1875, then the said Frost was to give the said makers a quit-claim title to the property. The court say: "The instrument in question is of an anomalous character, and it is somewhat difficult to classify it according to any well settled legal definition. In our judgment, it has more of the elements of a mortgage than of an absolute conveyance of the property named."

If, then, an instrument which declares that the makers sell, transfer, and assign their property to another, and

that it was their intention to vest the title in him only, creates a mortgage, then the paper before us, with the facts proved, is no more than a mortgage, and the judge was right in dismissing the *certiorari*.

But it is said that the proper test to be applied to settle the question is, whose loss would it have been if the cow and calf had died. We think that in such case, if Findley had sued Hughes for $25.00, the amount of the fee in his case, and Hughes had pleaded payment, offering this paper in evidence, and it had been rebutted by the testimony of the elder Findley as given in upon the trial of this case, that he would have reversed his judgment. Evidently the object was not to buy the cow and calf, but to secure the fee.

Judgment affirmed.